IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER PETERKA, GLOBAL SIX SIGMA USA, L.P. | § | |
| Plaintiffs | § | |
| | § | |
| vs. | § | |
| | § | |
| CRAIG J. SETTER , THE REVOCABLE LIVING TRUST OF CRAIG J. SETTER, THE REVOCABLE LIVING TRUST  OF LAUREN M. SETTER, HARMONY LIVING LLC, CENTER FOR CORPORATE ADVANCEMENT GROUP LLC, AVETA LIMITED, and CARNEGIE FOUNDATION LLC | § | CIVIL ACTION NO. _____ |
| Defendants | § | |

### PLAINTIFFS' ORIGINAL COMPLAINT, JURY DEMANDED

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Peter Peterka ("Peterka", and Global Six Sigma USA, L.P., ("Global Six Sigma") in this lawsuit, and files this Plaintiffs' Original Complaint against Defendants Craig J. Setter ("Setter"), The Revocable Living Trust of Crag J. Setter ("Craig Setter Trust), The Revocable Living Trust of Lauren M. Setter ("Lauren Setter Trust"),  Harmony Living LLC ("Harmony"), Center for Corporate Advancement Group LLC ("Corporate Advancement"), Aveta Limited ("Aveta"), and Carnegie Foundation LLC ("Carnegie") and in support thereof would respectfully show the Court and Jury as follows:

### I.

### PARTIES

1.     Peterka is an individual residing in Travis County, Texas, residing in Austin, TX 78732.

1

2.      Global Six Sigma is a domestic limited partnership organized in the State of Texas with its principal place of business in Travis County at 7301 RR 620N Ste 155 0362, Austin, TX 78726.

3.      Setter is an individual residing in Harmony, Butler County, PA.  Should he fail to waive service of summons, he can be served with citation and a copy of the complaint by serving him at his residence at in Harmony, PA.  Setter is a citizen of the State of Pennsylvania within the meaning and intent of 28 U.S.C. § 1332.

4.      The Craig J. Setter Trust is a trust located in Harmony, Butler County, PA, and should it fail to waive service of summons may be served with citation and a copy of the complaint by serving Setter, Settlor and Trustee of the Craig J. Setter Trust, at his residence in Harmony, PA.  The Craig J. Setter Trust is a citizen of the State of Pennsylvania within the meaning and intent of 28 U.S.C. § 1332.

5.      The Lauren M. Setter Trust is a trust located in Harmony, Butler County, PA, and should it fail to waive service of summons may be served with citation and a copy of the complaint by serving Lauren M. Setter, Settlor and Trustee of the Craig J. Setter Trust, at her residence in Harmony, PA.  The Lauren M. Setter Trust is a citizen of the State of Pennsylvania within the meaning and intent of 28 U.S.C. § 1332.

6.      Harmony is nominally a limited liability company chartered under the laws of Wyoming that claims to have a principal office in Wyoming. Should it fail to waive service of summons, Harmony Living LLC may be served via service of process on its registered agent, Northwest Registered Agent Service, Inc., 30 N. Gould St., Ste N, Sheridan, WY 82801.  Harmony is a nominally a citizen of the State of Wyoming in that it was incorporated in Wyoming. *See* 28 U.S.C. § 1332 (c)(1).  Harmony is also a citizen of

2

the State of Pennsylvania, in that it true principal place of business is in Pennsylvania. *See* 28 U.S.C. § 1332 (c)(1) and the allegations set out below.

7.      Corporate Advancement is nominally an Ohio domestic Limited Liability Company that claims to have its principal office in Cranberry Township, PA.  Should it fail to waive service of summons, it may be served via service of process on its agent, Phyllis Setter, at her registered address in Columbia Station, OH 44028.   Corporate Advancement is a citizen of the State of Pennsylvania within the meaning and intent of 28 U.S.C. § 1332 (c)(1)

8.      Aveta is nominally a company created and operated by Craig J. Setter and registered in the Isle of Man, England and maintaining a registered agent in Douglas, Isle of Man.  Should Aveta fail to waive service of summons, Aveta may be served via service of process on its agent, Inter-continental Management Limited, Douglas Chambers, North Quay, Douglas, IM1 4LA, Isle of Man.   Aveta is a citizen of the State of Pennsylvania within the meaning and intent of 28. U.S.C. § 1332. Required to provide an address, to the Secretary of State in Ohio for Aveta, Setter has given the address for Aveta as his own home address, and at an address approximately a 20 minute drive from Setter's current residence.  In other words, Aveta does not exist in the Isle of Man.  To the extent it has an existence it is in Pennsylvania.

9.      Carnegie is nominally a limited liability company chartered under the laws of Wyoming that claims to have a principal office in Wyoming. Should it fail to waive service of summons, Carnegie Foundation LLC may be served via service of process on its registered agent, Northwest Registered Agent Service, Inc., 30 N. Gould St., Ste N, Sheridan, WY 82801.  Carnegie is a nominally a citizen of the State of Wyoming in that it

was incorporated in Wyoming. *See* 28 U.S.C. § 1332 (c)(1).  Carnegie is also a citizen of the State of Pennsylvania, in that it true principal place of business is in Pennsylvania. *See* 28 U.S.C. § 1332 (c)(1) and the allegations set out below.

## II.

## JURISDICTION AND VENUE

10.     This case arises out of Defendants' false advertising and unfair competition in violation of the Lanham Act § 43(A)(1)(B), 15 U.S.C. § 1125; therefore, the Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

11.     The Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendants are residents of different states/countries and the amount in controversy in this case exceeds the sum or value of $75,000.00, exclusive of interest and costs.

12.     Based upon 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over Plaintiffs' state law claims for defamation, and false light.

13.     Venue is proper on multiple grounds.  Venue is proper in the under 28 U.S.C. § 1391 (b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Pennsylvania.  A substantial part of the actions detailed and alleged below were done by or at the direction of Setter while a resident of Butler County.  Further, venue is proper under 28 U.S.C. § 1391 (b)(1) in that Setter resides in the Western District, and each of the corporate defendants are residents of Pennsylvania for purpose of venue pursuant to  28 U.S.C. § 1391 (c)(2) in that each corporate defendant is subject to the Court's personal jurisdiction with respect to this civil

4

action, and each is specifically a resident of the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391 (d).

14.     Each of the Defendants are subject to personal jurisdiction in this Court. Craig J. Setter, the Craig Setter Trust, and the Lauren Setter Trust are residents of Pennsylvania.  Each of the corporate defendants have had continuous and systematic contacts with Pennsylvania and are subject to general and specific jurisdiction in Pennsylvania.  Each corporation is nominally incorporated in another state or country. But each defendant corporation is the alter ego of Setter and both the Craig Setter Trust and the Lauren Setter Trust (together "Setter Trusts"), and thus, each corporation is, in reality a resident of Pennsylvania.  Each corporate defendant is owned in full or majority by Setter/Setter Trusts.  Each corporate defendant is fully controlled and operated by Setter/Setter Trusts out of Butler County, Pennsylvania.  No corporate defendant has legitimate business operations, leases, employees in any forum in which they are nominally incorporated.  Each corporate defendant shares a unified managerial and supervisory structure – that is, Setter/Setter Trusts.  Setter/Setter Trusts is how each of these defendant corporations act for all purposes.  Setter controls the day to day operations of each of these corporate defendants, and each has continuous, systematic and intentional contacts with Butler County, Pennsylvania, and each Corporation operates out of Butler County, Pennsylvania.  There is no other person or entity that can act on behalf of each of these defendant corporations without the express consent and direction of Setter/Setter Trusts. Setter controls the marketing of each corporate Defendant.  Each defendant corporation's actions, and all of the actions that are complained of herein, were committed by Setter/Setter Trusts on each corporation's

behalf.  Communications directed to each of the defendant Corporations ultimately come to one person and one place.  Setter in Butler County, Pennsylvania.  The exercise of personal jurisdiction in this case would comport with fair play, substantial contacts with Pennsylvania, and substantial justice.   The actions complained of occurred in Pennsylvania, were done by or at the direction of Pennsylvania residents (Setter/Setter Trusts), and Setter/Setter Trusts owns and controls all defendant corporations.  The Setter Trusts are nominal owners of Harmony Living and possible other corporate shells of Setter, and the actions of Setter are the actions of both the Craig Setter Trust and the Lauren Setter Trust.

### III.

### BACKGROUND

15.    Global Six Sigma USA, L.P. (Global Six Sigma) is an organization that trains and provides consulting to individuals in Lean Six Sigma principles and practices.  Global Six Sigma is operated by its general partner, International Six Sigma, Inc., of which Peter Peterka is the Director and an employee. Peter Peterka is also a limited partner of Global Six Sigma.

16.    Lean Six Sigma, in brief, is a philosophy and set of practices designed to achieve reduction in waste and reduction in variation in outcomes to improve productivity within businesses or other environments.

17.    Peterka has over 25 years' experience in the industry as an improvement specialist and engineer working with numerous companies, including 3M, Dell, Dow, GE, HP, Intel, Motorola, Seagate, Xerox, and the US Men's Olympic Team.  Peterka is a

certified Master Black Belt in Lean Six Sigma and holds an MS degree in Statistics from Iowa State and a BS in Chemical Engineering from Purdue.

18.     Global Six Sigma has been in the business of providing Lean Six Sigma training and certification to individuals and organizations since 2004. Upon demonstration of proficiency in Lean Six Sigma and following training in Lean Six Sigma methodologies, Global Six Sigma offers practitioners different levels of belts such as yellow, green, and black, as is done in the field of martial arts.

19.     There are numerous organizations and individuals other than Global Six Sigma and Peterka that offer Lean Six Sigma training and certification.  Further, there is no governing body that regulates any of the training, content or certification of Lean Six Sigma training and certification providers.

20.     Originally, Setter, was simply a competitor of Global Six Sigma and offered training (or at least training materials) and certification in Lean Six Sigma under the name of Aveta Business Institute.  However, in approximately 2006, Setter invented out of whole cloth an "entity" he called "The Council for Six Sigma Certification" (Council).  Setter claimed that Aveta Business Institute was "accredited"  by the Council.  There was no actual "council" despite what the name states, but by having his training and certification organization "accredited" by what sounds like a group of experienced Lean Six Sigma practitioners, Setter made it appear that Aveta Business Institute possessed an accreditation by Lean Six Sigma experts.  In reality, it was Setter "accrediting" Setter.  But no consumer would be able to tell that.

21.     Upon information and belief, Setter began getting questions about his Council accreditation, so in 2010 he purchased the website www.sixsigmacouncil.org

7

(Council Website). There he created a website that furthered the illusion of a council of experts who were qualified to pass judgment and accredit organizations and individuals who offered Lean Six Sigma training and certification.

22.     Not satisfied with the ruse of accrediting his own business, Setter then began to list on the Council Website large numbers of universities that were supposedly accredited by the Council.  Now, visitors to the Council Website were duped into thinking that the Council accredited all manner of major universities who offered Lean Six Sigma training programs.  What no one knew was that many if not most of these accreditations were fake.  As set out below in Lanham Act – Count Four – Fake/False Accreditation, Setter has admitted that he "accredited" universities who never sought accreditation.  This is a process he euphemistically called "proactive accreditation" once he was caught but is really fake or false accreditation.  Indeed, once he was caught by a state court in Arizona in July 2018, he declared that he would discontinue the process of proactive accreditation, but the harm has been done. Exhibit 1.  Further, Setter's efforts to obscure his past actions make it difficult to follow up and ensure he has complied with the Arizona Court's injunction.  Setter also gave false accreditation to some Lean Six Sigma training organizations who had never requested accreditation by the Council.  Adding these Universities and training organizations made it appear that the Council was an organization of substance.

23.     Overtime, Setter began to offer free accreditation to Lean Six Sigma training organizations and individuals by the Council for some who did request accreditation.  In exchange, he would list these individuals and organizations on the Council Website and they would place the Council logo on their website, creating what is known as "linkbacks."

8

The Council lists a few criteria on the website for a training provider to obtain accreditation by the Council, but that too was a ruse.  A review of many of the "accredited" providers reveals that they do not meet the requirements posted on the Council Website.

24.    What Setter was really doing with the Council Website was creating a master marketing website for his other training websites Aveta Business Institute and ProSource Professional Certification.  The past design of the Council Website was such that providers were divided into categories based on geographic regions of the world and into a group of "University" providers.  At the top of categories around the world and even in the category of universities, a prominent link, for Aveta Business Institute was displayed.  Which made it appear that Aveta Business Institute was the top accredited provider in the given region.  However, viewers of the site were not informed that in reality it was an advertisement for Setter's own provider.  (In 2017, after criticism from Plaintiffs for this scheme, Setter briefly disclosed this as an advertisement, but did not reveal that both the Council and Aveta were his businesses.)  Other links to Aveta were on other pages on the Council Website.  On the one hand, Setter created a highly trafficked website that contained thousands of links to his own training and certification business, Aveta Business Institute.

25.    The history of Aveta Business Institute is one of shell games. Aveta Business Institute, also known as "Six Sigma Online," exists only at a website www.sixsigmaonline.org (Aveta Website).  Setter bills it on the Council Website as "a leading provider in the industry today."  Previously, Setter masked his involvement with the Aveta Website and Six Sigma Online/Aveta Business Institute through a company he created in the Isle of Man, Aveta Limited.  Thus, when a prospective customer signed up

9

at the Aveta Website to take a test, they made an agreement with Aveta Limited of the Isle of Man.  Then, he recently changed the nominal ownership of the assets to Corporate Advancement, an Ohio company.  Now, a prospective customer on the Aveta Website is making an agreement with Corporate Advancement.  Recently, on the Council Website, Setter was honest for a moment and admitted that "Six Sigma Online" is a business he created and one that he has operated since at least 2005.

26.     To obscure matters, even further, Setter then created a Wyoming LLC that he gave the pretentious name of Carnegie Foundation LLC (Carnegie).  Exhibit 2  When asked under oath to identify "all member, directors and principals of Center for Corporate Advancement Group, LLC," he replied, "Carnegie Foundation, LLC." Exhibit 3 at page 3. Setter stated that Carnegie's address is 412 N. Main Street, Buffalo, WY 82834, which is not true.  That is the address of the registered agent, Northwest Registered Agent Service Inc. Exhibit 4.  In fact, Northwest advertises that a feature of their services is that their customers "Use Our Address – Not Yours" on their website.  Exhibit 4.  Carnegie has no offices in Buffalo Wyoming or anywhere in Wyoming or any other state.  Carnegie is nothing more than an undercapitalized shell recently created by Setter to "own" Corporate Advancement, an undercapitalized shell, to operate the Aveta Website.  Setter owns and operates Carnegie and the corporate fiction should be disregarded as it is his alter ego.

27.     Turning back to Setter's fake council, it is important to note that the history of the Council and the Council Website has been made intentionally murky by Setter. Setter personally registered the website www.sixsigmacouncil.org in 2010, but claimed on November 20, 2016, that it is owned by Harmony Living.  As set out below, Setter has

intentionally erased his online tracks and those of his businesses to impede careful investigation of his fraudulent past.

28.     Harmony Living is a shell corporation created by Setter.  Recently, Setter disclosed that the Craig Setter Trust and Lauren Setter Trust own Harmony Living.  Setter and/or the Setter Trusts operate the Council Website and create the illusion of the existence of the Council.  Setter and/or the Setter Trusts operate Harmony Living, the Council, Council Website as an alter ego and Setter is responsible for the content of the Council Website and any actions of the Council.  Setter's actions with respect to Harmony Living, the Council and the Council Website are taken both in his individual capacity and as representative or agent of both of the Setter Trusts.

29.     The Setter Trusts as complained of herein have acted by and through Craig J. Setter.  All references to "Setter" or "Craig J. Setter" refer to his actions and conduct in an individual capacity and as representative or agent of both of the Setter Trusts, and all references to "Setter" or "Craig J. Setter" incorporate his capacity as representative or agent of both of the Setter Trusts as if fully set out verbatim.

30.     Setters actions in creating this false Council have misled Lean Six Sigma consumers.  The Council Website contains a banner at the top of the home page and on the top of every other page on the Council Website which declares in large type: "The Council for Six Sigma Certification – Official Industry Standard for Six Sigma Accreditation."  Understandably, there are people that believe the Council really is the "Official Industry Standard."  Thus, Global Six Sigma has received requests and even requirements from individuals believing that accreditation by the Council is meaningful, and that the failure to be accredited by the Council reflects poorly on Global Six Sigma.

While nothing could be further from the truth, those who are not knowledgeable of the industry would not know the Council is a fake organization originally designed  as a marketing scheme by Setter as a competitor to Global Six Sigma.

31.     Following complaints by Global Six Sigma, Setter has radically changed the Council Website (Exhibit 35). Instead of functioning primarily as an advertisement and vehicle to drive traffic to his Aveta Business Institute, Setter and Harmony Living dropped the pretense of being an independent accreditation site and began offering certifications for sale.  Setter and Harmony Living currently offer six sigma study guides, six sigma tests, and certifications.  At the Council Website, Harmony Living and Setter still offer accreditation for six sigma training providers, but the focus of the website is now the sale of certifications.

32.     As of the filing of this lawsuit, the Council Website still contains a banner at the top of the home page and on the top of every other page on the Council Website which declares in large type: "The Council for Six Sigma Certification – Official Industry Standard for Six Sigma Accreditation."  Thus, it appears that the Council Website is that of the Council.  But, there is no such organization.   The Council Website is owned by Harmony Living per Setter, and the "Examination, Assessment, and Certification Terms & Conditions" at https://www.sixsigmacouncil.org/terms-of-service/ state vaguely that:

> Council for Six Sigma Examination, Assessment, and Certification Services. These Council for Six Sigma Certification Terms apply to the enrollment in Six Sigma Council [sic] ("The Council for Six Sigma Certification") Examination, Assessment, and Certification Services offered by Harmony Living, LLC, 20436 Rt 19, Suite #620276, Cranberry Twp., PA 16037, United States by Enrollee. The Council for Six Sigma Certification Service(s) is further described on The Council for Six Sigma Certification's Website located at https://www.sixsigmacouncil.org.

The paragraph recognizes, obliquely, Harmony Living's involvement in the Council Website.

33.     Of course, there is no real council, so it is not a surprise that even its logo is questionable.  Prominently displayed on every page of the Council Website, the logo of the "Council" is a near duplicate of the seal of Florida International University (FIU). Setter took the seal of a well-established and legitimate university, made very minor changes to their seal, and co-opted it for his non-existent "Council."  A search of the Council's logo in Google Images brings up the seal of FIU.  The similarity is unmistakable. See Exhibit 5.

34.     Setter and Defendants have gone to great lengths to cover their tracks on the internet.  Prior to Setter posting his defamatory comments, the website histories were available from a website known as the Internet Archive/Wayback Machine (archive.org/web/), which collects and saves website screenshots from websites across the internet.  Prior to approximately April 2018, Setter's companies' websites were available on the Wayback Machine.  But, on or about April 2018, Setter deleted the history of each of the Defendant's websites and other websites owned or operated by Setter from the Internet Archive/Wayback Machine.  Searching for the history of the Council Website or the Aveta Website now brings up a message "Sorry. This URL has been excluded from the Wayback Machine."  Setter and/or the Setter Trusts did this at or near the time of his Defamatory posts and did so to hide his past actions from the scrutiny.  Setter was well aware his past web history would be carefully examined once he posted the Defamations (set out below).  The deletion of relevant web history by Setter and/or the Setter Trusts is evidence of the malicious intent behind his posting of Defamations.  In the defamatory

13

LinkedIn Post (Exhibit 6), he used various cites to the Wayback machine which demonstrates that Setter was well aware of its existence and use.

## IV.

## SPOLIATION

35.    Setter's and the Setter Trust's intentional spoliation of historical website data is set out in the paragraph above.   The deletions, as Setter well knew, have hampered the ability of Plaintiffs to obtain evidence of the Defendants' past postings on the web.   Accordingly, Plaintiffs seek an appropriate sanction from the Court regarding this spoliation.   The Third Circuit has enumerated the factors to be used by the Court in crafting an appropriate sanction: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.   *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).   At a bare minimum, Plaintiffs seek a spoliation inference that the destroyed web history would have been unfavorable to all Defendants and favorable to Plaintiffs.

## V.

## ALTER EGO

36.    The corporate or business form of Harmony Living, Aveta Limited, Corporate Advancement, and Carnegie should be disregarded as these corporate or business forms are shams designed by Setter and the Setter Trusts as a mere tool or business conduit for his personal actions.   There is a unity between these entities and Setter and the Setter Trusts such that the separateness of Harmony Living, Aveta Limited,

Corporate Advancement, and Carnegie do not exist.  Upon information and belief Setter and the Setter Trusts have failed to adhere to corporate formalities and there is a substantial intermingling of corporate and personal affairs.  Setter and the Setter Trusts used the corporate assets of these corporations to further his own interests.  Further, these entities were created by Setter and/or the Setter Trusts to allow him to perpetrate a fraud, through a web of fraudulent, false, and misleading claims, statements and actions detailed below.  Accordingly, Setter and the Setter Trusts are  liable for the actions of Harmony Living, Aveta Limited, Corporate Advancement, and Carnegie and their corporate fiction should be disregarded. Required to provide an address for Aveta Limited, to the Secretary of State in Ohio for Aveta, Setter has alternately given the address for Aveta as his own home address, and an address approximately a 20 minute drive from Setter's current residence.  Upon information and belief, Setter and/or the Setter Trusts have transferred websites and d/b/a's between his various corporate entities without consideration or regard for corporate formality.

## VI.

## DEFAMATION

**Defamation and Defamation *per se***

37.    Setter, the Setter Trusts, and Harmony, as set out below, have published false and malicious statements which detract from Peterka's and Global Six Sigma's reputation and injure Peterka's character, fame and reputation.  *See, Mzamane v. Winfrey*, 693 F.Supp.2d 442, 476 (E.D. Pa. 2010).  A statement is capable of a defamatory meaning if it tends to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him….or it ascribes

to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession." *Michalow v. Pasquerilla*, 2:16-CV-00464-CRE, 2016 WL 7404560, at *1, *5 (W.D. Pa. Dec. 22, 2016) (Internal citations omitted.)  Each of the Defamations below were published by Setter, the Setter Trusts and Harmony with malice, specifically with the intent to harm Peterka's reputation and the reputation of the business owned and operated by Peterka, Global Six Sigma, within the Lean Six Sigma community.  Each of the Defamations maliciously and intentionally ascribe to Peterka characteristics which would adversely affect his fitness for the proper conduct of his business in the Lean Six Sigma community in general and through Global Six Sigma.

38.     Each of the Defamations plead below are Defamations as to Peterka individually, but also, by defaming Peterka these are Defamations of Global Six Sigma since Peterka is a director of the general partner of Global Six Sigma, a limited Partner and is identified in the eyes of the relevant public as the as the public face of Global Six Sigma.  Accordingly, by defaming Peterka, as an officer and an employee, Defendants are likewise negatively reflecting discredit upon the method by which Global Six Sigma conducts its business in the relevant Six Sigma consuming public.  Likewise, the Defamations that refer specifically to Global Six Sigma are defamations of Peterka individually because Peterka is identified in the eyes of the relevant public as the as the public face of Global Six Sigma, and defamations of Global Six Sigma would be understood by the public to be defamations of Peterka.

39.     Each of the Defamations plead below are part of a defamation action brought against Defendants who are engaged in the business of selling goods and

16

services in the Six Sigma/Lean Six Sigma industry, and the Defamations and defamation action arise out of malicious and intentional statements by Defendants maliciously and intentionally directed at Peterka individually and at Six Sigma/Lean Six Sigma business operations in which Peterka is involved, including Global Six Sigma.  The Defamations were published with the intent to promote the business of the Defendants and to harm Peterka's reputation in the business community, his business interests, and they claim, directly and by innuendo, that Peterka is not fit to conduct business in the leans six sigma industry. Each was designed to harm Peterka professionally, and thereby, personally. The Defamations were directed by Defendants to potential purchasers of Six Sigma/Lean Six Sigma products and/or services, which are potential customers of Peterka's business interests and Defendants and has directly and proximately caused potential customers of Global Six Sigma to refuse to do business with Global Six Sigma.

**Defamation – LinkedIn**

40.    In April 2018, Setter on behalf of himself and the Setter Trusts set up a skeletal LinkedIn account for the purpose of publishing on April 8, 2018 an article entitled "Peter Peterka a 6 Sigma Fraud? You decide" (Article). Attached hereto as Exhibit 6.  That the LinkedIn account was set up solely for the purpose of defaming Plaintiffs is evident from Setter's LinkedIn "home page" (Exhibit 7).  The account was set up under the name "Craig S."  Setter clearly had no business reason for his use of LinkedIn, or he would have used his full name.  Setter has only one connection, one article, and lists no experience other than that word the "President."  The LinkedIn page does not list what organization for which he claims to be "President."  The "contact info" tab on his home page (Exhibit 7, page 2) provides a link to the LinkedIn home page (Exhibit 7, page 1), which is the

same as  giving no contact information.  LinkedIn is normally used for the purpose of making and communicating with business connections, but Setter's failure to disclose his last name, his business name, his experience, and his contact information demonstrates that his use of LinkedIn was solely to spread his defamatory article.  Setter has attempted to maximize exposure and push traffic to this page by placing links to his LinkedIn Article on the website of a heavily trafficked Lean Six Sigma trade website isixsigma.com (Exhibit 8 at page 2).  Like the LinkedIn account, Setter created his account on isixsigma.com on or about April 8, 2018 in order to further link to and spread his Defamations, targeted to Plaintiffs peers (Exhibit 9)

41.    Although cloaked as a response to an article published on LinkedIn in 2015 by Peterka, the Article's purpose was to maliciously defame Peterka and as a marketing scheme to promote the Council Website.  Setter even went so far as to block Peterka from viewing Setter's article in an effort to hide his Defamations from Peterka.  Setter disabled comments on the article in an effort to ensure his defamatory statements were not rebutted.

42.    **Defamation:** The Article begins with a literally false and misleading defamation and defamation by innuendo that "Over recent years, Peter Peterka (owner of several six sigma training websites 6sigma.us 6sigma.ru, 6sigma.com, sixsigmatraining.us, isssp.com, isssp.org) appears to have been spreading a lot of misinformation about other organizations for his own financial gain."  The foregoing statement is literally false and misleading since Peter Peterka has not spread "a lot of misinformation about other organizations", much less for his "own financial gain".  Setter has simply made up the claim without proof.  While the Article is allegedly a response to

a 2015 post by Peter Peterka on his personal LinkedIn site, that is a sham excuse. This statement alleges "the spreading of misinformation" far more broadly than the 2015 LinkedIn post by Peter Peterka. Setter has no proof of financial gain from any alleged misinformation since misinformation was not given.   Further, the Defamation is a defamation by innuendo.   Taken in context, the impression the Defamation would naturally engender, in the minds of average Lean Six Sigma community members, impugns the business reputation of Peterka as being dishonest for the purpose of financial gain.  This Defamation naturally would tend to lower Peterka in the estimation of the community and deter third persons from associating or dealing with him.

43.   **Defamation:** The Article defames Peter Peterka where it states that "It appears Peter Peterka has actually been the one committing fraud."  The Defamation is made without evidence of fraud and no evidence of fraud exists.  The Defamation is a literal falsehood.  It is also defamation by innuendo.  Taken in context, the impression the Defamation would naturally engender, in the minds of average Lean Six Sigma community members, impugns the business reputation of Peterka as being dishonest for the purpose of financial gain.  This Defamation naturally would tend to lower Peterka in the estimation of the community and deter third persons from associating or dealing with him.

44.   **Defamation:**   "It appears that he then maliciously spread misinformation/deception about CSSC and IASSC with his LinkedIn post (and other similar posts elsewhere) for his own financial gain."  This Defamation falsely accuses Peter Peterka of maliciousness and spreading falsehoods with respect to a LinkedIn post and other unnamed and unknown posts, all for financial gain. There is no objectively

19

verifiable evidence of maliciousness by Peter Peterka with respect to his 2015 LinkedIn Post (or any other post) with respect to CSSC or IASSC. Setter goes on to defame Peterka claiming that the LinkedIn and other unknown and unnamed posts contain misinformation/deception.  On December 12, 2016, Setter was asked specifically with respect to the 2015 LinkedIn post to "advise as to precisely what facts you allege are misrepresentations and your evidence that specifically supports such a claim.  See Letter of December 12, 2016, attached as Exhibit 10.  Setter was silent.  He never responded. This Defamation alleges the 2015 LinkedIn post and the other unnamed and unknown posts were "for his [Peterka's] financial gain, is a literally false statement simply invented by Setter and for which he provides no evidence.  The use of the phrase "It appears that" implies the existence of undisclosed defamatory facts to justify the Defamation. This Defamation draws on the unsupported claim that facts actually exist that Peterka maliciously spread misinformation/deception about CSSC and IASSC with his LinkedIn post (and other similar posts elsewhere) for his own financial gain."

45.  **Defamation: "**According to court records, it appears that Peter attempted to have the case thrown out. He failed. It appears that Peter attempted to win a countersuit. He failed. It appears Peter was left with either settling out of court with IASSC or continuing to fight a losing battle against them."  With these statements, Setter makes multiple literally false and defamatory claims regarding a now settled lawsuit between IASSC and Peterka and other entities.  The Court records are public, and Setter was aware of what they said, which bears no resemblance to what he posted.  Peterka did not fail in any attempt to have the case "thrown out" nor did he fail in an attempt to "win a countersuit."  There was no "losing battle" as there were no rulings on any party's

substantive claims.   The Court records reveal that Setter's statements are false. Defendants in the IASSC matter asserted multiple counterclaims and a motion to dismiss. Just as no ruling was ever made on IASSC's allegations, no ruling was ever made on the counterclaims or motion to dismiss.  Instead, the parties ultimately agreed to a confidential settlement agreement.  Setter's claims of failure by Peterka in the IASSC lawsuit are literally false and were meant to imply that a Court found merit in either the claims made against the Peterka and Global Six Sigma in the IASSC matter or a lack of merit in the motion to dismiss and counterclaim.  Setter's publication was made knowingly and/or with a reckless disregard for the truth.  Setter simply invented his claim out of whole cloth, and his statement, "These are publicly accessibly [sic] documents. I recommend the public review them to make their own conclusions…." was made simply to bolster the Defamation in the first place knowing that few people would take the time or effort to access records through the PACER system and then study them to determine that his statements were false.  The use of the phrase "According to court records, it appears that" implies the existence of undisclosed defamatory facts to justify the Defamation.  The Court records do not support the claims of Setter and, in fact, demonstrate that they are false.  The Defamation is a defamation by innuendo.  Taken in context, the impression the Defamation would naturally engender, in the minds of average Lean Six Sigma community members, impugns the business reputation of Peterka as being dishonest for the purpose of financial gain.  This Defamation naturally would tend to lower Peterka in the estimation of the community and deter third persons from associating or dealing with him.

21

46.     **Defamation:** "Meanwhile, it appears he continued work on his anonymous accreditation website. He reorganized it as a non-profit (in my opinion just a deceptive tactic meant to promote a false sense of non-biased credibility)."  Setter is referring to the website of a Texas non-profit of which Peterka is the chairman, the International Society of Six Sigma Professionals (ISSSP).   That ISSSP is a non-profit for the purpose of deception is false and is a defamation intended to injure Peterka's reputation and impeach his honesty, integrity and reputation.   No evidence supports Setter's claim that ISSSP's non-profit status is deceptive or creates a false sense of non-biased credibility. Ironically, Setter's non-existent Council previously claimed to be a non-profit. When asked on December 6, 2016 for proof that this claim that the Council was a non-profit organization was true, he never responded with the requested proof.  See Exhibit 10.  Setter's words are defamatory despite his use of the phrase "in my opinion."  The defamatory statements are reasonably understood to imply the existence of undisclosed defamatory facts to justify the opinion. *Mzamane,* 693 F.Supp.2d at 476.  Specifically, the statement implies, falsely, that ISSSP is biased and was created by Peterka to provide accreditation for the Lean Six Sigma community while deceiving that community.   The Defamation is a defamation by innuendo.   Taken in context, the impression the Defamation would naturally engender, in the minds of average Lean Six Sigma community members, impugns the business reputation of Peterka as being dishonest for the purpose of financial gain.  This Defamation naturally would tend to lower Peterka in the estimation of the community and deter third persons from associating or dealing with him.

47.     **Defamation (2nd sentence):** "The main reason I do not have Peter in court right now is because the statute of limitations in Texas requires you to bring action within

1 year of defamation first occurring. I am fairly certain based on Peter's court case that he would know this… which is why I believe [sic] he continues to mislead people for his own financial gain here and elsewhere."  Setter makes the unsupported and defamatory statement that Peterka "continues to mislead people for his own financial gain here and elsewhere." The statement is a general, unsupported and unsupportable smear intended to injure Peterka's reputation and impeach his honesty, integrity and reputation.  Setter's reference to "here" makes the statement illogical, as the only "here" is Setter's own defamatory LinkedIn post.   Setter's reference to "elsewhere," a global non-specific Defamation is evidence of his malice in that he simply desires to substantially injure or harm Peterka with reckless disregard of the truth.   Setter's words are defamatory despite his use of the phrase "which is why I beleive [sic]."   The defamatory statements are reasonably understood to imply the existence of undisclosed defamatory facts to justify the opinion.  Specifically, the statement implies that Setter possesses undisclosed facts that Peterka support his general smear of the reputation of Peterka. The Defamation is a defamation by innuendo.   Taken in context, the impression the Defamation would naturally engender, in the minds of average Lean Six Sigma community members, impugns the business reputation of Peterka as being dishonest for the purpose of financial gain.  This Defamation naturally would tend to lower Peterka in the estimation of the community and deter third persons from associating or dealing with him.

48.    **Defamation:** "Peter appears to have a history of trying to manipulate the legal system as well. His court records indicate that he appears to have avoided being served his court summons 14 times before the judge finally ordered the summons to be 'Serviced by Publication' so he could no longer avoid it."  A record allowing process to be

23

served by publication is not a "history of trying to manipulate the legal system."  Peterka travels extensively, although the process server could have easily seen that via Peterka's schedule which is online.  The process server made attempts at service while Peterka was not at home and apparently at a residence which was not Peterka's.  Peterka discovered the service by publication upon returning from an out of town trip and timely responded to the papers that were served.  Manipulate as used here means "to control or play upon by artful, unfair of insidious means especially to one's own advantage." Merriam-Webster Online, definition 2A.  The claim of manipulation of the legal system is false, without privilege, and is calculated to injure Peterka's reputation and impeach his honesty, integrity and reputation. The Defamation is a defamation by innuendo.  Taken in context, the impression the Defamation would naturally engender, in the minds of average Lean Six Sigma community members, impugns the business reputation of Peterka as being dishonest for the purpose of financial gain.  This Defamation naturally would tend to lower Peterka in the estimation of the community and deter third persons from associating or dealing with him.

49.   **Defamation:** "Peter seems to claim his courses are special, but it was stated in the court case by IASSC that Peter's Green Belt course was 'just one-third of the industry average' in terms of hours, and a Black Belt 'which is approximately less than half of the minimum training duration that IASSC defines as satisfactory or sufficient'." Defendant's statements are false and misleading.  Quoting a false and misleading statement from a pleading in an unrelated lawsuit provides no privilege for the Defamation. Worse, Setter is inaccurate in his characterization of the claims from the unrelated lawsuit.  Global Six Sigma offers Lean Six Sigma training courses.  Setter's

characterizations of Global Six Sigma's Green Belt and Black Belt training are false and misleading and defame both Global Six Sigma and Peterka by virtue of their relationship to each other. The Defamation is a defamation by innuendo.  Taken in context, the impression the Defamation would naturally engender in the minds of average Lean Six Sigma community members impugns the business reputation of Peterka as being without appropriate standards in the conduct of business.  This Defamation naturally would tend to lower Peterka in the estimation of the community and deter third persons from associating or dealing with him.  When the truth is that Setter's non-existent Council has accredited training providers that do not meet the Council's own standards.  In fact, Peterka was able to complete Black Belt certification by an organization accredited by the Council in less than one hour.  To received accreditation by the Council, the Council allegedly requires "95 contact hours" to obtain a Black Belt certification.   See Exhibit 11.

50.    Global Six Sigma's in-person Green Belt training and certification is a two-week course that has been reviewed by a certified PMP® and approved by PMI® for 60 PDU's upon successful completion of all training required for the Green Belt. See Exhibit 12. A PDU is one hour of learning/activity. See Exhibit 13.  IASSC's website states that it expects to see "~56 hours for Green Belt" and then qualifies the use of this number substantially.  Exhibit 14.  Thus, the statement that "Peter's Green Belt course 'just one-third of the industry average in terms of hours" is false. It exceeds IASSC's standard for hours, which is, in itself, not a strict number per the IASSC website. The Defamation is a defamation by innuendo.  Taken in context, the impression the Defamation would naturally engender in the minds of average Lean Six Sigma community members maliciously and intentionally impugns the business reputation of Peterka as being without

appropriate standards in the conduct of business.  This Defamation naturally would tend to lower Peterka in the estimation of the community and deter third persons from associating or dealing with him.

51.    Global Six Sigma also offers online training for a Green Belt training certificate, which provides 40 PDUs (professional development units) from PMI®, the Project Management Institute. See Exhibit 15.  To obtain a Certified Six Sigma Green Belt, a project must also be completed, which will require additional time beyond the 40 hours for the online training.  Again, the statement that "Peter's Green Belt course 'just one-third of the industry average in terms of hours'" is false.  Even ignoring the time beyond 40 hours required to obtain a certification, it is far more than 1/3 of IASSC's "~56 hours for Green Belt" standard.   The denigration of Peter Peterka by a false and misleading claim about him personally and related to Global Six Sigma's Green Belt is a Defamation intended to injure Peterka's reputation and impeach his honesty, integrity and reputation.   The Defamation is a defamation by innuendo.   Taken in context, the impression the Defamation would naturally engender in the minds of average Lean Six Sigma community members impugns the business reputation of Peterka as being without appropriate standards in the conduct of business.  This Defamation naturally would tend to lower Peterka in the estimation of the community and deter third persons from associating or dealing with him.

52.    Global Six Sigma also offers webinar-based training for a Green Belt training certificate, which provides 36 PDUs from PMI®. See Exhibit 16.  However, there are additional outside homework assignments required beyond the 36 classroom hours. Further, to obtain a Certified Six Sigma Green Belt, a project must also be completed,

which will require additional time beyond the 36 hours for the webinar training.  Again, the statement that "Peter's Green Belt course 'just one-third of the industry average in terms of hours'" is false.   Even ignoring the time beyond 36 hours required to obtain a certification, it is far more than 1/3 of IASSC's "~56 hours for Green Belt" standard.  The denigration of Peter Peterka by false and misleading claims about him personally and related to Global Six Sigma's Green Belt are a Defamation intended to injure Peterka's reputation and impeach his honesty, integrity and reputation.   The Defamation is a defamation by innuendo.   Taken in context, the impression the Defamation would naturally engender in the minds of average Lean Six Sigma community members impugns the business reputation of Peterka as being without appropriate standards in the conduct of business.   This Defamation naturally would tend to lower Peterka in the estimation of the community and deter third persons from associating or dealing with him.

53.   Global Six Sigma offers a four-week Lean Six Sigma Black Belt program which provides 120 PDU's for successful completion of the training and exams. See Exhibit 17.  Setter's claim that "Peter's… Black Belt 'which is approximately less than half of the minimum training duration that IASSC defines as satisfactory or sufficient'" is false. ISAAC states that it expects to see training programs of a duration of "~140 hours for black belt" and then qualifies the use of this number substantially.  See Exhibit 14.  Global Six Sigma's Black Belt program is far more than "approximately less than one-half of the minimum training duration that IASSC defines as satisfactory or sufficient."   The denigration of Peter Peterka by false and misleading claims about him personally and related to Global Six Sigma's Black Belt are a defamation intended to injure Peterka's reputation and impeach his honesty, integrity and reputation.  Global Six Sigma offers an

online Lean Six Sigma Black Belt program, which is comprised of the Six Sigma Green Belt Sessions 1 and 2 and Six Sigma Black Belt Sessions 3 and 4.  See Exhibit 18.  The Green Belt sessions provide 40 PDU's (Exhibit 15) and the Black Belt sessions provide 40 more PDUs (Exhibit 18) for a total of 80 PDU's.  Eighty hours is not "approximately less than one half" of IASSC's standards.  Thus, Setter's statements about Peter Peterka are false and misleading claims about him personally and as they relate to the Global Six Sigma's Black Belt programs are a defamation intended to injure Peterka's reputation and impeach his honesty, integrity and reputation.   The Defamation is a defamation by innuendo.  Taken in context, the impression the Defamation would naturally engender in the minds of average Lean Six Sigma community members impugns the business reputation of Peterka as being without appropriate standards in the conduct of business.  This Defamation naturally would tend to lower Peterka in the estimation of the community and deter third persons from associating or dealing with him.

54.     **Defamation: "**They also stated Peter's company would 'sell, without any additional defined criteria requirements, a certification to participants for simply attending their  training.'  (https://www.6sigma.us/product/black-belt-project-certification/)."   Setter again tries to hide his false and misleading statement by taking a false claim from a pleading in an unrelated civil action and publishing it in his article.  The claim is false, without privilege, and is calculated to injure Peterka's reputation, and impeach his honesty, integrity and reputation. Repeating the allegations contained in an unrelated civil lawsuit does not provide Setter privilege to publish the false statements.  Global Six Sigma provides a Black Belt Training Certificate only upon successful completion of the Six Sigma Black Belt Training.   The underlying Black Belt training contains the project

28

requirements and templates for the project certification process.  Only upon submission and approval of the project, following completion of the Black Belt training, is a Six Sigma Black Belt certification issued.  Global Six Sigma does not 'sell, without any additional defined criteria requirements, a certification to participants for simply attending their training.'  The website referenced by Setter, Exhibit 19, requires successful completion of the "Online Black Belt training program" and states that the price include up to "four hours of Master Black Belt remote support and project review time."  The online Black Belt training criteria require completion of online exams, quizzes and a 4 session comprehensive examination.  See Exhibit 18.  Certification is not available until completion of the training, passing of the 4th comprehensive examination, and a project has been reviewed and approved by a Master Black Belt. See Exhibit 18.  The foregoing Defamation is false, without privilege, and is calculated to injure Peterka's reputation and impeach his honesty, integrity and reputation. The Defamation is a defamation by innuendo.  Taken in context, the impression the Defamation would naturally engender in the minds of average Lean Six Sigma community members impugns the business reputation of Peterka as being without appropriate standards in the conduct of business. This Defamation naturally would tend to lower Peterka in the estimation of the community and deter third persons from associating or dealing with him.

55.  **Defamation:** "(again, remember that IASSC provided supporting proof that his training was actually substandard)."  The foregoing statement by Setter is false. No privilege attaches to Setter's republication of statements made in litigation that he was not a party to.  Even if he were a party, the republication is lost when republished to an audience outside of the proceedings.  *Bochetto v. Gibson*, 580 Pa. 245, 253, 860 A.2d

67, 72 (2004) Further, as set out above, the training of Global Six Sigma is not substandard.  Further, Global Six Sigma has never submitted any of its program material and details to IASSC or Setter or his companies for review and approval.  Thus, neither IASSC, Setter, nor Setter's companies have the factual basis to support the Defamation that Global Six Sigma's training is substandard.  Setter's statement is false and made knowingly and with reckless disregard for the truth solely to injure Peterka's business reputation, subject him to ridicule, and impeach his honesty and integrity.   The Defamation is a defamation by innuendo.   Taken in context, the impression the Defamation would naturally engender in the minds of average Lean Six Sigma community members impugns the business reputation of Peterka as being without appropriate standards in the conduct of business.  This Defamation naturally would tend to lower Peterka in the estimation of the community and deter third persons from associating or dealing with him.

56.  **Defamation:** "In my opinion, Peter needs to artificially boast [sic] his offerings to lend credence to his overpriced training." Setter defames Peterka by stating that Peterka needs to "artificially boast [sic] his offerings to lend credence to his overpriced training."  Peterka does not have any "offerings" personally and does not artificially boost ("or boast") non-existent offerings.  Global Six Sigma does not artificially boost its training. The use of the term "overpriced" is false and designed to injure the reputation of Global Six Sigma and Peterka.  Both clauses within the statement are false, without evidence, without privilege and is calculated to injure the reputations of Global Six Sigma and Peterka.  The statement is calculated to impeach the honesty, integrity and reputation of both Global Six Sigma and Peterka.  The Defamation is a defamation by innuendo.  Taken

in context, the impression the Defamation would naturally engender in the minds of average Lean Six Sigma community members impugns the business reputation of Global Six Sigma and Peterka as being without appropriate standards in the conduct of business. This Defamation naturally would tend to lower Global Six Sigma and Peterka in the estimation of the community and deter third persons from associating or dealing with them.  Setter's words are defamatory despite his use of the phrase "in my opinion."  The defamatory statements are reasonably understood to imply the existence of undisclosed defamatory facts to justify the opinion.

57.    **Defamation:** "Peter was one of the first people to offer a 'White Belt' (charging $99.00)."   Global Six Sigma first offered a White Belt in approximately February 2009.   There were multiple providers who offered a "White Belt" prior to Global Six Sigma's existence. Other providers offered White Belts as early as 2002 and 2003, and Global Six Sigma was not formed until 2004. Setter simply invented the claim that "Peter was one of the first people to offer a 'White Belt'" which Setter then claims, "wasn't necessary for the industry," brags about how he published an article on the subject and then started offering free White Belts. Setter lied about Global Six Sigma's and Peter Peterka's history with the White Belt, and then used the lie to injure Global Six Sigma's and Peterka's reputation and impeach their honesty, integrity and reputation in the business community.  Setter makes the false claim about Peterka being one of the first people to offer a White Belt, and then ridicules the existence of the White Belt to tarnish Global Six Sigma's and Peterka's reputation by innuendo.   Taken in context, the impression the Defamation would naturally engender in the minds of average Lean Six Sigma community members impugns the business reputation of Global Six Sigma and

Peterka as being without appropriate standards in the conduct of business.   This Defamation naturally would tend to lower Global Six Sigma and Peterka in the estimation of the community and deter third persons from associating or dealing with him.

58.   **Defamation:** "That was a LOT of money out of Peter Peterka's pocket." Setter continues his Defamation by claiming that he created a course, gave it away for free and "[t]hat was a LOT" of money out of Peter Peterka's pocket." Setter's businesses operating as Online Six Sigma/Aveta Business Institute offer a free White Belt.  Setter's claim that this somehow cost Peterka a "LOT" of money is simply false. There is no evidence that the fact that Setter offered a free White  Belt cost Global Six Sigma any money at all much less a "LOT" of money.   Setter's intent is to give a defamatory impression that Global Six Sigma and Peterka were making large sums of money offering a program that Setter considered unnecessary and harmful, and Setter thereby harmed Global Six Sigma's and Peterka's reputation with the false implication which was made with the intent to injure Global Six Sigma's reputation and Peterka's reputation and impeach their honesty, integrity and reputation.   The Defamation is a defamation by innuendo.  Taken in context, the impression the Defamation would naturally engender in the minds of average Lean Six Sigma community members impugns the business reputation of Global Six Sigma and Peterka as being without appropriate standards in the conduct of business.  This Defamation naturally would tend to lower Global Six Sigma and Peterka in the estimation of the community and deter third persons from associating or dealing with them.  The White Belt Certification offered by Global Six Sigma is a more substantial offering than what is offered by Setter and his alter ego Aveta Limited, which provides no instructor or technical support according the Aveta Limited website.  Setter's

32

White Belt is for a "limited time" and is nothing more than an insubstantial offering that is a marketing ploy.

59.   **Defamation:** "Peter appears to have made reckless statements, paid for advertising to promote them and got smacked around in court because of it." Setter makes a series of false statements with no evidence.  Peterka made no reckless statements, did not pay for advertisement to promote reckless statements, and did not get "smacked around" in court.  Indeed, the reference to "court" is clearly to the IASSC litigation in which no rulings on the merits of either parties' allegation were made and, instead, a settlement agreement was reached by both parties resulting in mutual dismissals of their claims. The publicly available pleadings, which Setter accessed, show that no ruling of any kind was made by the Court on the merits of any party's claims.  The reckless Defamations were, instead, made by Setter with his false and misleading statements that were calculated to injure Peterka's reputation and impeach his honesty, integrity and reputation. The Defamation is a defamation by innuendo.  Taken in context, the impression the Defamation would naturally engender in the minds of average Lean Six Sigma community members impugns the business reputation of Peterka as being without appropriate standards in the conduct of business.  This Defamation naturally would tend to lower Peterka in the estimation of the community and deter third persons from associating or dealing with him.

60.   **Defamation:**  The title of the article, "Peter Peterka a 6 Sigma Fraud?" is a defamation making the false claim directly and by implication that Peterka is a fraud in the very industry that is his chosen profession.  The Defamation imputes a crime to Peterka and is a defamation *per se*.    Setter uses the term fraud to globally and broadly

injure the reputation of Peterka.  The Defamation is made without evidence that Peter Peterka is a "6 Sigma Fraud" and no such evidence exists. The statement is calculated to injure Peterka's reputation and impeach his honesty, integrity and reputation. Couching the statement as a question does not render it non-defamatory.  The Defamation is a defamation by innuendo.  Taken in context, the impression the Defamation would naturally engender in the minds of average Lean Six Sigma community members impugns the business reputation of Peterka as being without appropriate standards in the conduct of business.  This Defamation naturally would tend to lower Peterka in the estimation of the community and deter third persons from associating or dealing with him. The Defamation implies the existence of undisclosed defamatory facts. This Defamation implies that Peter Peterka is guilty of the crime of Theft by Deception.

**Council Website Defamations**

61.    As stated above, Craig J. Setter and Harmony Living operate a website www.sixsigmacouncil.org (Council Website) which states it is the home page of "The Council for Six Sigma Certification," a non-existent organization.  On or about April 8, 2018, Setter and Harmony Living caused defamatory statements to be published regarding Plaintiff Peter Peterka and Global Six Sigma on multiple pages throughout the Council Website.  A list of the defamatory statements (highlighted) and the web addresses are attached as Exhibit 20.  Defendants purport to issue a "Consumer Alert" on the Council Website regarding Global Six Sigma and five websites operated by Global Six Sigma, 6sigma.com, 6sigma.us, sixsigma.us, sixsigmatraining.us, and 6sigma.ru.

62.    **Defamation**: "Consumer Alert: We have received evidence that appears to indicate that this provider and/or its owner(s) have been engaged in the distribution of

information that it knows to be factually false, deceptive, and/or misleading.   We STRONGLY encourage the public to exercise due-diligence when considering this organization."   The foregoing defamatory statements (Exhibit 21) concern Peter Peterka and Global Six Sigma and five websites operated by Global Six Sigma, 6sigma.com, 6sigma.us, sixsigma.us, sixsigmatraining.us, and 6sigma.ru.   Setter and Harmony Living falsely claim to have "evidence" that Global Six Sigma and/or Peterka have distributed information that Global Six Sigma or Peterka know "to be factually false, deceptive, and/or misleading." Global Six Sigma and/or Peterka have not knowingly distributed such information.   The purpose of the Defamation is to imply undisclosed fact – and those "facts" are defamatory.   Further, the statement is so broad and vague as to be a general defamation of Peter Peterka's reputation directly and through Global Six Sigma. The statements are calculated to injure both Peterka's reputation and the reputation of Global Six Sigma and impeach their honesty, integrity and reputation.   Setter and all Defendants have no such evidence.   Setter was asked in December 2016 to advise Peterka precisely what facts in Peterka's 2015 LinkedIn post that Setter alleges are misrepresentations and to provide the evidence that specifically supports such a claim.   Letter to Craig J. Setter and Harmony Living, attached as Exhibit 10.   Setter received the letter and made no response. In other words, Setter never denied the facts asserted in Peterka's 2015 LinkedIn post.   The statement of "Consumer Alert:" and that "[w]e STRONGLY encourage the public to exercise due-diligence when considering this organization" is a defamation by innuendo since when combined with the prior sentence is nothing more than bolstering false claims and further defaming Peterka and Global Six Sigma.   These statements are

35

designed to form a belief in the mind of the reader that Peterka and Global Six Sigma are not reputable business and the consumer should stay away from them.

63.     **Defamation:**  The Council Website contains a large number of defamatory statements and links to the defamatory statement set out in the above-paragraph.  The defamatory statements are highlighted in Exhibit 21. While the format varies, the pages communicate the defamatory statement: "Consumer Alerts: Suspicious Six Sigma Websites" and lists Global Six Sigma, Peter Peterka and websites operated by Global Six Sigma.   The statement "Consumer Alerts: Suspicious Six Sigma Websites" is a defamation both directly and by innuendo when combined with the "Consumer Alert" pages (see immediately preceding paragraph) to which the statement is linked."  The claim that the websites are suspicious is false and is no more than a generalized libel and defamation of Peterka and Global Six Sigma intended to injure Peterka's and Global Six Sigma's reputation and impeach their honesty, integrity and reputation.

64.     **Defamation:** CONSUMER ALERTS!  Based on a combination of reviews, feedback, court documents, and/or public records, the following providers and/or their owner(s) appear to have been engaged in the distribution of information that it knows to be factually false, deceptive, and/or misleading.  We STRONGLY encourage the public to exercise due-diligence when considering any of these organizations…." These statements are attached as Exhibit 22. The foregoing defamatory statements (highlighted in Exhibit 22) refer to each of five websites operated by Global Six Sigma. Setter and Harmony Living falsely claim to have "evidence" that Global Six Sigma and/or Peterka have distributed information that Global Six Sigma or Peterka know "to be factually false, deceptive, and/or misleading." Global Six Sigma and/or Peterka have not knowingly

distributed such information.  The statement is so broad and vague as to be a general defamation of Peter Peterka's reputation directly and through Global Six Sigma. The statements are calculated to injure Peterka's and Global Six Sigma's reputation and impeach their honesty, integrity and reputation. Defendants have no such evidence and when asked on March 3,2017 to advise Peterka as to precisely what facts Setter alleges in Peterka's 2015 posts are misrepresentations and what evidence specifically supports such a claim, Setter made no response.  Exhibit 23.  In other words, Setter never denied the facts asserted in Peterka's 2015 LinkedIn post or 6sigma.us post.  The statement "Consumer Alerts:" and that "[w]e STRONGLY encourage the public to exercise due-diligence when considering this organization" is a defamation by innuendo since when combined with the prior sentence is nothing more than bolstering false claims and further defaming Peterka.  These statements are designed to form a belief in the mind of the reader that Peterka and Global Six Sigma are not reputable, and the consumer should stay away from them.

**Defamation/Libel – General and Harm**

65.    Each of the forgoing paragraphs reciting the facts giving rise to this claim are incorporated herein as if fully set out verbatim.

66.    Each of the malicious and false statements listed above and denoted as a "Defamation" were false statements of fact that referred to Peter Peterka directly or indirectly in a business context and to Global Six Sigma directly or indirectly.   Each Defamation was "of and concerning" Peterka and his business interests. Each defamation was "of and concerning" the business interests of Global Six Sigma.  Each Defamation was and is literally false and each is capable of a defamatory meaning.  Each Defamation

tends to blacken Peterka' and Global Six Sigma's reputation and injure Peter personally and in his business and profession in the Lean Six Sigma community and Global Six Sigma's business and reputation in the Lean Six Sigma community.

67.     Each Defamation was a statement of fact, and to the extent phrases such as "In my opinion" or the like were used, each was done only to attempt to cloak a statement of fact as an opinion, and each statement relied upon undisclosed defamatory facts.

68.     To the extent any of the words utilized themselves were not defamatory in nature, the context in which they were used is defamation by innuendo.

69.     Each Defamation was without privilege and were communicated and published to third parties via the internet by Setter and Harmony Living and were intentionally made available to third parties with the knowledge that the statement would be widely disseminated and each were calculated to injure Peterka's reputation and impeach his honesty, integrity and reputation.  Defendants intentionally and maliciously used search engine optimization (SEO) at Setter's Council Website (Exhibits 20, 21 and 22) and then linked to the Defamations using isixsigma.com (Exhibit 8 at p. 2) in a calculated scheme to spread his Defamations as widely as possible.  Plaintiffs deny that any privilege attaches, but any in the unlikely event that any privilege attaches, the Defendants have abused that privilege and exceeded the scope of any such privilege.

70.     Each Defamation is defamation *per se,* in that each Defamation specifically imputes misconduct to Peterka in his conduct of business.  Each Defamation has harmed the reputation of Peterka and Global Six Sigma.  *See, Agriss v. Roadway Exp., Inc.,* 334

Pa. Super. 295, 327–29, 483 A.2d 456, 473–74 (1984), *Clemente v. Espinosa*, 749 F. Supp. 672, 677 (E.D. Pa. 1990)

71.    With regard to each Defamation, Setter and Harmony Living were acting with actual malice, knowing disregard for the truth, and negligence.

72.    As a direct and proximate result of Setter and Harmony Living's publication of the Defamations, Peterka and Global Six Sigma has suffered harm, including but not limited to injury to character and reputation, damages due to loss business, loss of business opportunity and expenses required to address the online Defamations.

73.    As a direct and proximate result of the publication of the Defamations, Peterka and Global Six Sigma have suffered special damages in that his business interests have been harmed including loss of reputation and business.   These Defamations meet the Pennsylvania standard as set out by the Supreme Court of Pennsylvania in *Joseph v. Scranton Times L.P.*, 634 Pa. 35, 78–79, 129 A.3d 404, 430 (2015) which stated that the Plaintiff must demonstrate:

> whether the statement tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third parties from associating or dealing with him. (Citations omitted). We have specifically indicated that, as to this element, "[i]t is not enough that the victim of the [statements] ... be embarrassed or annoyed, he must have suffered the kind of harm which has grievously fractured his standing in the community of respectable society.

74.    The Defamations have caused great harm to Peterka's reputation and that of his business Global Six Sigma within the Lean Six Sigma community.   Global Six Sigma

has had at least one client who stated that the Defamations were the reason for his cancellation of a class he signed up for and for his demand of a refund of money.  Of course, as Defendant well knows, most prospective clients who have seen the Defamations are not going to inform Plaintiffs that they have selected another provider because of the Defamations, they will simply select another provider having been influenced by the Defamations.  A number of Peterka colleagues who know him and know the Defamations are false, have expressed concern about the Defamations, because of the serious harm these Defamations are causing to his reputation among those who do not know him.

75.     Defendants in a calculated and malicious manner used search engine optimization (SEO) techniques to ensure their Defamations ranked as highly as possible in searches related in any way to Plaintiffs; therefore, insuring the widest possible audience for the Defamations.  As a direct result of those SEO techniques, Plaintiffs have been forced to spend time and money on countering the SEO efforts of Defendants, including the hiring of reputation management professionals.  Global Six Sigma has incurred $8,000 in expenses as of the date of this Complaint in connection with these services, and the cost will continue to increase.  These expenses will not cure the harm done to Plaintiffs by the actions of Defendants but are merely an effort to mitigate the malicious and intentional use of SEO techniques of Defendants to widen the dissemination of the Defamations and further the harm of Plaintiffs.

76.     Each of the foregoing Defamations were published by Defendants with common law malice and actual malice.  Peterka is entitled to punitive damages, as Setter and Harmony Living have acted with malice and were published with knowledge of their

falsity or with a reckless disregard for the truth. Likewise, the conduct of Setter and Harmony Living is outrageous, because of the evil motive or reckless indifference to the rights and interests of others, specifically Peterka and his business interests.

77.     Plaintiff Peterka seeks permanent injunctive relief following adjudication of the speech as issue as defamatory barring Defendants from continued publication of each of the false statements set out above and seeks an order that all speech adjudicated as defamatory must be removed from the internet and from the Internet Archives or similar websites that cache "historical" webpages, as well as from any other place the Defamations have been published and barring re-publication of the Defamations. Permanent injunctive relief is an appropriate remedy following adjudication of the aforementioned statements as defamatory as Plaintiff would be irreparably harmed by defamatory statements allowed to remain posted on the internet or in any other publication or that were republished.

78.     Additionally, Plaintiff Peterka seeks costs, prejudgment and post-judgment interest as allowed by law.

**VII**

**FALSE LIGHT**

79.     Each of the foregoing Defamations are incorporated herein as if fully set out verbatim. Each of the facts recited under the foregoing Defamations were publications by Setter, the Setter Trusts, and Harmony Living which portrayed Peterka in a false light that would be highly offensive to a reasonable person. Each was a major intentional misrepresentation of Peterka's character, history, activities or beliefs such that serious offense may be reasonably expected to be taken. The foregoing Defamations

(false light publications) were published by Setter and Harmony Living with knowledge of the falsity of the statements or reckless disregard as to the falsity of the statements and that false light in which Peterka would be placed.

80.    As a direct and proximate result Setter, the Setter Trusts, and Harmony Living's publication of the statements that placed Peterka in a false light, Peterka and Global Six Sigma have suffered harm, including but not limited to injury to character and reputation, damages due to loss of business, loss of business opportunity, income, and expenses required to address the online Defamations.

81.    As a direct and proximate result of the publication of the malicious and defamatory statements by the Defendants, as more fully set forth herein, that placed Plaintiffs, Peterka and Global Six Sigma, jointly and severally, in a false light, Peterka and Global Six Sigma have each suffered special damages in that their individual business interests have been harmed including loss of reputation and business interests, past, present, and future. The Defamations, (false light publications), have caused great harm to Plaintiffs' joint and several reputations and to that of the business interests of Global Six Sigma within the Lean Six Sigma community, placing Peterka and Global Six Sigma in a false light.  Plaintiffs have had at least one client who stated that the Defamations were the reason for his cancellation of a class he had signed up for and for his demand of a refund of money.  Of course, as Defendants well know, most prospective clients who have seen the Defamations are not going to inform Plaintiffs that they have selected another provider because of the Defamations, said prospective lean Six Sigma consumers will simply make the selection of another lean Six Sigma provider having been negatively and motivated influenced by the Defamations. A number of Peterka's

colleagues who know him and know that the Defamations are intentionally malicious and false, have expressed sincere concern and regret about the Defamations, because of the serious harm these Defamations are causing to Peterka and Global Six Sigma's honorable and fine reputation among those who do not know him and of Global Six Sigma.  This is the essence of the harm, injury, and losses caused by intentionally placing innocent people and businesses in a false light which was known by the Defendants prior to them having taken their intentional actions and started on their deleterious and negative course of action against the Plaintiffs, jointly and severally.

82.    Defendants in a calculated and malicious manner used search engine optimization (SEO) techniques to ensure their Defamations (false light publications) ranked as highly as possible in searches related in any way to Plaintiffs; therefore, ensuring the widest possible audience for the Defamations.  As a direct result of those SEO techniques, Plaintiffs have been forced to spend time and money on countering the SEO efforts of Defendants, including the hiring of reputation management professionals. Plaintiffs have incurred $8,000 in expenses as of the date of this Complaint in connection with these services, and the cost will continue to increase.  These expenses will not cure the harm done to Plaintiffs by the actions of Defendants but are merely an effort to mitigate the malicious SEO techniques of Defendants.

83.    Each of the foregoing false light publications were published by Defendants with common law malice and actual malice.  Peterka is entitled to punitive damages as Setter and Harmony Living have acted with malice and were published knowledge of their falsity or a reckless disregard for the truth.  Likewise, the conduct of Setter, the Setter Trusts and Harmony Living is outrageous, because of the evil motive or reckless

indifference to the rights and interests of others, specifically Peterka and his business interests.

## VIII.

## LANHAM ACT

**Lanham Act – Count One – False Warnings**

84.     Each of the forgoing paragraphs reciting the facts giving rise to this claim are incorporated herein as if fully set out verbatim.

85.     Through certain false and misleading statements Defendants made on the Council Website (www.sixsigmacouncil.org) Defendants have and are conducting an interstate marketing scheme made of multiple false and misleading representations of fact which misrepresent the nature, characteristics and qualities of the services and activities offered by Global Six Sigma in violation of the Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125.   The false and misleading statements actually deceived or have a tendency to deceive a substantial segment of the audience of prospective Six Sigma customer audience, influencing the purchasing decisions of potential customers and resulting in injury to Global Six Sigma.

86.     As set out above, Setter and the Setter Trusts on behalf of Harmony Living, a competitor of Global Six Sigma published the following on the Counsel Website: "Consumer Alert: We have received evidence that appears to indicate that this provider and/or its owner(s) have been engaged in the distribution of information that it knows to be factually false, deceptive, and/or misleading.  We STRONGLY encourage the public to exercise due-diligence when considering this organization."  This false and misleading

statement and as well as other similar and related false and misleading statements (highlighted in Exhibits 20 and 21) concern Peter Peterka and Global Six Sigma and five websites operated by Global Six Sigma, 6sigma.com, 6sigma.us, sixsigma.us, sixsigmatraining.us, and 6sigma.ru.  Setter and Harmony Living falsely claim to have "evidence" that Global Six Sigma and/or Peterka have distributed information that Global Six Sigma or Peterka know "to be factually false, deceptive, and/or misleading." Global Six Sigma and/or Peterka have not knowingly distributed such information.

87.     The foregoing statements are part of a commercial advertising scheme by Setter and Harmony Living that is both false and misleading and the direct and proximate cause of damages to Global Six Sigma.

88.     The Council Website contains a large number of false and misleading statements and links to the false and misleading statements set out in the above-paragraph.  The false and misleading statements are highlighted in Exhibits 20 and 21. While the format varies, the pages communicate the false and misleading statement: "Consumer Alerts: Suspicious Six Sigma Websites" and lists Global Six Sigma, Peter Peterka and websites operated by Global Six Sigma.  The statement "Consumer Alerts: Suspicious Six Sigma Websites" is false and misleading both directly and by implication when combined with the "Consumer Alert" pages  (see immediately preceding paragraph) to which the statement is linked."  The claim that the websites are suspicious is false.

89.     The foregoing statement is part of a commercial advertising scheme by Defendants that is both false and misleading and the direct and proximate cause of damages to Global Six Sigma.

90.     Defendants published false and misleading statements on the Council Website as set out and highlighted in Exhibit 22 as part of a commercial advertising scheme.  The publication states "CONSUMER ALERTS!  Based on a combination of reviews, feedback, court documents, and/or public records, the following providers and/or their owner(s) appear to have been engaged in the distribution of information that it knows to be factually false, deceptive, and/or misleading.  We STRONGLY encourage the public to exercise due-diligence when considering any of these organizations…."  The Council Website contains the false statement "Consumer Alerts: Suspicious Training Providers."

91.     The statements set out above and set out in detail above are part of an interstate marketing scheme conducted by Setter on behalf of Harmony Living and are each false and misleading representations of fact which misrepresent the nature, characteristics and qualities of the services and activities offered by Global Six Sigma in violation of the Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125.  The false and misleading statements actually deceived or have a tendency to deceive a substantial segment of the audience of prospective Six Sigma customer audience, influencing the purchasing decisions of potential customers and resulting in injury to Global Six Sigma.

**Lanham Act – Count Two – LinkedIn**

92.     Each of the forgoing paragraphs reciting the facts giving rise to this claim are incorporated herein as if fully set out verbatim.

93.     In April 2018, Setter set up a skeletal LinkedIn account for the sole purpose of publishing on April 8, 2018 an article entitled "Peter Peterka a 6 Sigma Fraud? You decide" (Article). Attached hereto as Exhibit 6.  Although cloaked as a response to an article published on LinkedIn in 2015 by Peter Peterka, the Article's actual purpose is to

maliciously defame Peter Peterka and as a marketing scheme to promote Setter and Harmony Living's Council Website and to spread false and misleading information concerning Global Six Sigma directly, and indirectly, by spreading false and misleading information concerning the principal of Global Six Sigma, Peter Peterka.

94.    Each of the items denoted as "Defamations" and set out in detail above in Section V Defamation are part of an interstate marketing scheme conducted by Setter on behalf of Harmony Living and are each literally false and misleading representations of fact which misrepresent the nature, characteristics and qualities of the services and activities offered by Peterka and Global Six Sigma in violation of the Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125.  The false and misleading statements actually deceived or have a tendency to deceive a substantial segment of the audience of prospective Six Sigma customer audience, influencing the purchasing decisions of potential customers and resulting in injury to Global Six Sigma in terms of loss of good will and loss of sales.

**Lanham Act – Count Three – Fake Council**

95.    Setter, the Setter Trusts, and Harmony Living through the Council Website claims that "The Council for Six Sigma Certification is a professional association devoted to maintaining minimum standards for both Six Sigma Certification and Lean Six Sigma Certification." This phrase and the use of the term "Council" on every page on the Council Website misleads persons seeking Lean Six Sigma training into believing that there is in fact a council – that is a body of Six Sigma professionals that oversee this organization. The Council Website does not identify any members of the council or their qualifications, because no such "council" exists.  On at least two occasions in 2014, Setter was asked by Peterka, on behalf of Global Six Sigma to identify the members of the council and their

qualifications and Setter did not respond. Again, twice in 2016 (See Exhibits 24 and 10) and once in 2017 (Exhibit 23), Setter was asked to identify who the members of the "Council" were.  The only response from Setter was a letter to counsel for Plaintiffs dated November 20, 2016, in which Setter did not identify the Council members.  See Exhibit 25.  Setter's letter was a deceptive non-response.

96.      If the Council were the "Official Industry Standard" it should have been open and obvious who the members of the Council were and are and how they are qualified to oversee the industry accreditation and since Setter created and maintained the Counsel Website identifying the "Council" should have been a simple matter. Continuing the ruse, the "Council's" Facebook page refers to itself as a "body," again implying that it is made up of multiple qualified industry professionals.  Yet, no industry professionals, indeed no names at all, can be found on either the Council Website or the Facebook page. At least one of their customers was unable to contact them and expressed his frustration on their webpage. See Exhibit 26. Of course, that comment has been scrubbed by Setter.

97.      The foregoing use of the term Council as set out above is part of an interstate marketing scheme conducted by Setter on behalf of Harmony Living and are each literally false and misleading representations of fact which misrepresent the nature, characteristics and qualities of the services and activities offered by Setter and Harmony Living in violation of the Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125.  The false and misleading statements actually deceived or have a tendency to deceive a substantial segment of the audience of prospective Six Sigma customer audience, influencing the

purchasing decisions of potential customers and resulting in injury to Global Six Sigma in terms of loss of good will and loss of sales.

**Lanham Act – Count Four - Fake/False Accreditation**

98.     Each of the forgoing paragraphs reciting the facts giving rise to this claim are incorporated herein as if fully set out verbatim.

99.     Setter has admitted under oath that he and Harmony engaged in a scheme of fake or false accreditation of universities who did not seek accreditation or any type of acknowledgement from Setter, Harmony or the non-existent "Council."  See Ruling of July 23, 2018 at p. 4 (Exhibit 1).  Setter admitted that he, Harmony and the "Council" simply picked out Universities, who had sent them nothing about any Six Sigma program that they may have had and deemed them "accredited" by the "Council."  Setter then placed those logos on the CSSC website making it appear that these Universities had gone through the accreditation process required by the "Council" to become "Council" certified. It was all a ruse.  When called on it under oath in the Superior Court of Maricopa County Arizona, Setter and Harmony promptly informed the Court that they had stopped the practice of "proactive accreditation." Exhibit 1 at p. 7.  "Proactive accreditation" is a euphemism for false or fake accreditation invented by Setter during the hearing held in Maricopa County on July 2, 2018.  The Honorable Roger E. Brodman in his order of July 23, 2018 defined "proactive accreditation" as "companies or universities that have not sought accreditation from CSSC." (Exhibit 1 at p. 6.))

100.   The impact of the fake accreditation scheme is made even worse by the literally false claim on the "Council" website which deceptively claims that those that the "Council" has accredited have chosen "to come together behind our standardization after

disclosing their internal operations."  See Exhibit 27.  The statement was a lie and Setter knew it was a lie when he posted it.  Setter and Harmony list dozens of universities on the Council Website.  See Exhibit 28.   Judge Brodman's order makes it clear that the website includes universities and other organizations which did not chose to "come together behind" Setter, Harmony or CSSC.  Upon information and belief, many of the Universities and other organizations on the "Council" website not affirmatively sought accreditation from the "Council" and chosen "to come together behind…[CSSC's]…standardization after disclosing their internal website operations."

101.   The foregoing tactic of fake or false accreditation by the Council as set out above is part of an interstate marketing scheme conducted by Setter on behalf of Harmony Living and are each literally false and misleading representations of fact which misrepresent the nature, characteristics and qualities of the services and activities offered by Setter and Harmony Living in violation of the Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125.  The false and misleading statements actually deceived or have a tendency to deceive a substantial segment of the audience of prospective Six Sigma customer audience, influencing the purchasing decisions of potential customers and resulting in injury to Global Six Sigma in terms of loss of good will and loss of sales. Lanham Act – Count Five – Official Industry Standard

102.   Each page on the Council Website carries the false claim that the Council is the "Official Industry Standard for Six Sigma Accreditation."  See e.g., Exhibits 20 and 21. The use of the foregoing phrase implies that a governing entity has designated the "Council" as an "Official Industry Standard." Of course, there is no such governing entity and the claim is simply designed to confuse and mislead others into believing the Council

50

has sanction by a non-existent governing entity.  Thus, potential customers seeking Lean Six Sigma training are duped by the actions of Setter and Harmony Living into believing that they should seek Lean Six Sigma Training from a trainer certified by a non-existent Council which was itself designated by a third party as the "Official Industry Standard for Six Sigma Accreditation."   All of which is false and designed to mislead potential customers seeking Lean Six Sigma training.  Craig J. Setter is well aware that there is no "official" industry standard and admitted in 2018 "There has never been to my knowledge a universally industry-accepted 'standard' for certification or any type of recognized 'accrediting' agency in the Six Sigma community" (See Exhibit 8).  In other words, on the Council website Setter knowingly makes it appear that the "Council" has been sanctioned as the official industry standard, while elsewhere acknowledging on professional forums that there is no official industry standard.

103.   The foregoing use of the phrase "Official Industry Standard" in bold type on each page of the Council Website is a part of an interstate marketing scheme conducted by Setter and Harmony Living and the phrase is a literally false and misleading statement which misrepresent the nature, characteristics and qualities of the services and activities offered by Setter and Harmony Living in violation of the Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125.  The false and misleading statements actually deceived or have a tendency to deceive a substantial segment of the audience of prospective Six Sigma customer audience, influencing the purchasing decisions of potential customers and resulting in injury to Global Six Sigma in terms of loss of good will and loss of sales.

**Lanham Act – Count Five - Commercial**

104.    Setter and Harmony Living have published a video entitled "Council for Six Sigma Certification Commercial" on the Council Website and on the commercial video site Vimeo (see Exhibit 29) which repeats the false and misleading claim that "The Council is the official accrediting agency for Six Sigma training."  The video promotes the concept that employers should only choose individuals certified in Lean Six Sigma by providers certified by The Council for Six Sigma Certification."

105.    The foregoing use of the phrase by Setter and Harmony Living that "The Council is the official accrediting agency for Six Sigma training" is a literally false statement in the video is a continuation of the ruse designed to imply that there is actually an accrediting council and that it is somehow officially sanctioned is part of a commercial advertising scheme by Setter and Harmony Living which use a falsehood to misrepresent the nature, characteristics and qualities of the services and activities offered by Setter and Harmony Living in violation of the Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125.  The literally false and misleading representations of fact which misrepresent the nature, characteristics and qualities of the services and activities offered by Setter and Harmony Living in violation of the Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125.  The false and misleading statements actually deceived or have a tendency to deceive a substantial segment of the audience of prospective Six Sigma customer audience, influencing the purchasing decisions of potential customers and resulting in injury to Global Six Sigma in terms of loss of good will and loss of sales.

**Lanham Act – Count Six – Government Recognized**

106.    Setter and Harmony Living claim on the Council Website homepage to be "Government Recognized" and previously claimed that "As stated under section H.6.10 of the United States General Services Administration's Human Capital & Training Solution DRFP, 'The Council for Six Sigma Certification provides the industry standard for a Six Sigma Black Belt Certification.'" Setter and Harmony Living's claim to be Government recognized is false and misleading. Recently, Setter and Harmony Living modified the Council Website, and now explain in a footnote that "Government Recognized" does not actually mean "Government Recognized." Exhibit 30 Their attempt to explain away the deception does not make it less deceptive.  Further, the claim formerly on the Council Website regarding alleged recognition by the GSA as the "industry standard" is false.  In fact, the GSA rejected the Defendants attempt to include a mention of the Council and the Council Website (Exhibit 31).  The GSA fully rejected any mention of the Council, stating "We have removed the Contractor Key Personnel scoring element due to Industry Feedback."

107.    The foregoing use of the terms "Government Recognized" and claim of recognition by the GSA are false claims and part of a deceptive commercial advertising scheme by Defendants which use false and misleading representations of fact which misrepresent the nature, characteristics and qualities of the services and activities offered by Setter and Harmony Living in violation of the Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125.  The literally false and misleading representations of fact which misrepresent the nature, characteristics and qualities of the services and activities offered by Setter and Harmony Living in violation of the Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125.  The false

and misleading statements actually deceived or have a tendency to deceive a substantial segment of the audience of prospective Six Sigma customers, influencing the purchasing decisions of potential customers and resulting in injury to Global Six Sigma in terms of loss of good will and loss of sales.

**Lanham Act – Count Seven – Independent Third-Party Accrediting Agency**

108.   Each of the forgoing paragraphs reciting the facts giving rise to this claim are incorporated herein as if fully set out verbatim.

109.   Previously, Setter and Harmony Living claimed the Council was a "third-party accrediting body within the Six Sigma industry that does not provide training, mentoring, coaching, or consulting services." Yet, Setter operated the Council Website and simultaneously operated the for-profit Aveta Website providing training through the Aveta Website under the names of Aveta Business Institute and Six Sigma Online training. Setter and Defendants also operated ProSource Professional Certification (www.prosource-certification.com) as another for-profit training website. Setter registered the domain "sixsigmacouncil.org." used for the Aveta Website. The Aveta Website then maintained an "Accredited Six Sigma Provider Directory" of the "independent" Council, which listed Aveta Business Institute first in each category in the directory: Africa, Asia, Canada, Caribbean, Central America, Eastern Europe, Egypt, European Union, India, Mexico, Middle East, Oceania, South America and the United States. Indeed, the Aveta Business Institute is even listed first in "University Programs" in the United States. Aveta Business Institute is listed first, regardless of alphabetization, and is listed with a brighter background that is unique to Aveta Business Institute, setting it apart from all others. The Council's home page pitches "Free White Belt" and clicking

on the button takes the viewer directly to Six Sigma Online Aveta Business Institute's website.  The claim of independence by the Council was false. Setter claimed that Aveta Business Institute is a registered trade name of Aveta Limited.  But Setter registered Aveta Limited in Ohio as a foreign entity giving the Ohio Secretary of State his home address in Harmony, PA 16037 as the address for copies of the company's documents and establishing his mother, Phyllis Setter, as the agent for service of process of Aveta Limited. See Exhibit 32.  In other words, Aveta Limited was simply a shell that Setter used to try and create a false appearance of separation between the Council Website and the Aveta Website.

110.    The Council Website was no more than an advertising front for Defendants' Aveta Website.  The Majestic Historic Index shows the Council Website had 17,914 backlinks to the Aveta Website. See Exhibit 33.  In other words, the Council Website was simply a front for the Aveta Website.  Visitors to what appeared to be an independent non-profit certifying council were pushed to the Defendants for profit Aveta Website operated nominally as Six Sigma Online/Aveta Business Institute.  The Aveta Website likewise prominently claims that Six Sigma Online/Aveta Business Institute is "Fully accredited by The Council for Six Sigma Certification" and even embeds "CSSC's latest commercial" in the website.  See Exhibit 34.  This further demonstrates the lack of independence between these websites/organizations.  All of it leads to Setter.

111.    Recently Setter and Harmony Living radically changed their scheme.  They removed the pretense of the "Council" as being an independent agency accrediting providers, and now directly and prominently sells certifications, but now under the banner of "The Council for Six Sigma Certifications – Official Industry Standard for Six Sigma

Accreditation."   See Exhibit 35.  Thus, Setter and Harmony directly compete with Global Six Sigma, while simultaneously claiming to be part of "Council" and as the "Official Industry Standard."

112.   The foregoing past claims of Setter and Harmony Living that the Council was independent were false claims and part of a deceptive commercial advertising scheme by all Defendants which use false and misleading representations of fact which misrepresent the nature, characteristics and qualities of the services and activities offered by Setter and Harmony Living in violation of the Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125.

113.   The literally false and misleading statements actually deceived or have a tendency to deceive a substantial segment of the audience of prospective Six Sigma customer audience, influencing the purchasing decisions of potential customers and resulting in injury to Global Six Sigma through a loss of goodwill and loss of sales.

**Lanham Act – Count Eight – Accreditation Standards**

114.   Each of the forgoing paragraphs reciting the facts giving rise to this claim are incorporated herein as if fully set out verbatim.

115.   Setter and Harmony Living through the Council Website list accreditation standards for an organization to "obtain Council of Six Sigma Certification." See Exhibit 36.   The most prominently displayed accreditation standard is the requirement for "minimum student contact hours" of 95 "minimum" for Lean Six Sigma Black Belt and 35 "minimum" for Lean Six Sigma Green Belt. Yet the "Council" approves providers who do not meet the stated standards.  Six Sigma Online/Aveta Business Institute is the business of Setter/Aveta Limited/Corporate Advancement/Carnegie.  But Setter's own business

does not meet the requirements of the his "Council." Six Sigma Online/Aveta Business institute do not require any "contact hours." The Six Sigma Online/Aveta Institute requirements, Exhibit 37, plainly state that for Yellow Belt and Green Belt "certification," the student simply has to pass certain online exams with a score of 70% or higher. Black Belt and Master Black Belt require passing certain online exams and add completion of Black Belt projects. There are no student contact hours required. As further evidence, Setter created a survey and published the results. See Exhibit 38 at p. 3. The survey details the requirements of Six Sigma Online. It states that "Students read the assigned sections of the book, and then they take an online exam for that section. If you are in the Black Belt Program a project will be required. They also have plenty of educational videos, templates, PowerPoints, etc. But none of it is required to be reviewed (i.e. the exams don't test you on it)."

116.    Additionally, Peterka obtained a Lean Six Sigma Master Black Belt from MSI Certified (https://www.msicertified.com/), a "Council" approved provider, in approximately 43 minutes. Peterka obtained a Lean Six Sigma Black Belt from SSGI (https://www.6sigmacertificationonline.com/), a "Council" approved provider in approximately 41 minutes, and a Lean Six Sigma Master Black Belt from SSGI in approximately 65 minutes. See Exhibit 39. With each organization there were no "contact" hours required.    While there were materials made available by each organization that could be reviewed, neither required any review of the materials. While Peterka has an expert knowledge of the Lean Six Sigma and can be expected to pass a test more quickly than others, both of these approved providers require no minimum contact hours nor is any vetting done of the applicant to verify that they have a background

and experience which qualifies them for certification upon satisfactory text completion. Furthermore, there is not verification that the person taking the test is the person to whom the certification is to be given.  The actions of the Setter and Harmony Living through the Council Website in approving providers who do not meet the Council's stated standards allow competitors of Global Six Sigma to claim accreditation by the Council – The Official Industry Standard for Six Sigma Accreditation – while failing to meet the alleged standards.  The actions of Setter, Aveta Limited, Corporate Advancement, and Carnegie in promoting the Aveta Website as meeting the "Council" accreditation, and thereby the Council's state standards were false and misleading.  The foregoing promotions and statement are false claims and part of a deceptive commercial advertising scheme by Setter, Harmony Living, Aveta Limited, Corporate Advancement, and Carnegie which use false and misleading representations of fact which misrepresent the nature, characteristics and qualities of the services and activities offered by Defendants in violation of the Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125.  The literally false and misleading statements actually deceived or have a tendency to deceive a substantial segment of the audience of prospective Six Sigma customer audience, influencing the purchasing decisions of potential customers and resulting in injury to Global Six Sigma resulting in a loss of sales and loss of goodwill.

**Lanham Act – Count Nine - Survey**

117.   Each of the forgoing paragraphs reciting the facts giving rise to this claim are incorporated herein as if fully set out verbatim.

118.   On or about 2014 and 2015 Setter individually and acting through Aveta Limited caused a survey to be created and published on the internet. See Exhibit 39.

Unsurprisingly, the survey rated "Six Sigma Online" as superior in value to seven other online providers of Lean Six Sigma training.  The survey has been taken down from the internet and removed from the Internet Archive/Wayback Machine.  Thus, today, it cannot be found on the internet.  Setter, Aveta Limited, Corporate Advancement and Carnegie have cause to be placed on the homepage of the Aveta Website (see Exhibit 40), a banner that proclaims Six Sigma Online/Aveta Business Institute as "Ranked #1 Three years in a row" in very large type with a large gold typed emblem emblazoned with "Voted #1."  On information and belief, the survey was simply the creation of Setter and/or his agents and not the results of an independent survey.  The promotion of the survey by Setter, Aveta Limited, Corporate Advancement, and Carnegie are false claims and part of a deceptive commercial advertising scheme by Setter, Aveta Limited, Corporate Advancement, and Carnegie which use false and misleading representations of fact which misrepresent the nature, characteristics and qualities of the services and activities offered by Defendants in violation of the Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125. The literally false and misleading statements actually deceived or have a tendency to deceive a substantial segment of the audience of prospective Six Sigma customer audience, influencing the purchasing decisions of potential customers and resulting in injury to Global Six Sigma through loss of good-will and loss of sales.

**Lanham Act – Count Ten – Setter's Use of CSSC to Bolster His Own Companies**

119.   Each of the forgoing paragraphs reciting the facts giving rise to this claim are incorporated herein as if fully set out verbatim.

120.   Numerous Lean Six Sigma training providers promote their CSSC accreditation in an effort to bolster their sales.  Setter operates a website known as

"ProSource Professional Certifications" (prosource-certification.com) and on this site promotes the logo of CSSC.  ProSource deceptively claims that "our certifications adhere to the Body of Knowledge set forth by the Council for Six Sigma Certification."  Exhibit 41 (homepage of ProSource).  Even though ProSource is Setter's own company, it does not meet CSSC's standards, so Setter uses the qualifying phrase that "our certifications adhere…" as a sleight of hand to avoid admitting that the programs do not meet CSSC standards.

121.   Nevertheless, elsewhere, Prosource has taken out web based advertisements that flatly (and falsely) state that it is fully accredited by CSSC.  See Exhibit 42 at p. 3.   Nominally, the ProSource website is operated by Corporate Advancement/Carnegie (Exhibit 43 at paragraph 1), but in reality, Setter operates ProSource.  Setter, Corporate Advancement and Carnegie use CSSC accreditation and its logo in a deceptive manner to bolster their sales.  The promotion of the CSSC logo by Setter, Aveta Limited, Corporate Advancement, and Carnegie are false claims and part of a deceptive commercial advertising scheme by Setter, Aveta Limited, Corporate Advancement and Carnegie which use false and misleading representations of fact which misrepresent the nature, characteristics and qualities of the services and activities offered by Defendants in violation of the Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125.  The literally false and misleading statements actually deceived or have a tendency to deceive a substantial segment of the audience of prospective Six Sigma customer audience, influencing the purchasing decisions of potential customers and resulting in injury to Global Six Sigma through loss of good-will and loss of sales.

**Lanham Act – General**

122.   Each of the foregoing statements set out in the above paragraphs and exhibits which are false and misleading statements as set out above were statements about the Peterka and Global Six Sigma's services. These false and misleading statements were a part of an interstate marketing scheme.  By posting the false and misleading statement on the internet, each false and misleading statement has entered interstate commerce.  *See NTP Marble, Inc. v. AAA Hellenic Marble, Inc., 799 F.Supp.2d 446, 451 (E.D. Pa. 2011)*.  Each of the of false and misleading descriptions of fact had a tendency to deceive a substantial segment of its audience and to influence the purchasing decision of the readers who seek Lean Six Sigma training.  Because of the false and misleading statements of Plaintiffs set out above, all of which are directed to Global Six Sigma's potential and current clients, having caused actual harm to Plaintiffs.

123.   Defendants' false and misleading statements have caused persons interested in Lean Six Sigma training to believe the false and misleading statements and diverted sales away from Global Six Sigma. The false and misleading statements of Defendants have misled relevant consumers and harmed the reputation and goodwill of Global Six Sigma. As a direct and proximate cause of the conduct of Plaintiffs complained hereof it is presumed as a matter of law that Global Six Sigma has been injured by the diversion of sales.  At least one current client of Global Six Sigma has demanded a return of his money, previously paid, due to the Defendants' false and misleading statements. Plaintiff does not bear the burden of detailing individualized loss of sales, but merely need show some customer reliance on the false advertising.  *Mun. Revenue Serv., Inc. v. Xspand, Inc.*, 700 F.Supp.2d 692, 716 (M.D. Pa. 2010)

124.    Of course, potential customers who have viewed the false and misleading statements will not inform Plaintiffs of their decision to seek Lean Six Sigma training elsewhere, they will simply go elsewhere for that training.

125.    Defendants in a calculated and malicious manner used search engine optimization (SEO) techniques to ensure their false and misleading statements ranked as highly as possible in searches related in any way to Plaintiffs; therefore, ensuring the widest possible audience for the false and misleading statements.  As a direct result of those SEO techniques, Plaintiffs have been forced to spend time and money on countering the SEO efforts of Defendants, including the hiring of reputation management professionals.  Global Six Sigma has incurred $8,000 in expenses as of the date of this Complaint in connection with these services, and the cost will continue to increase.  These expenses will not cure the harm done to Plaintiffs by the actions of Defendants but are merely an effort to mitigate the malicious SEO techniques of Defendants.

126.    Pursuant to 15 U.S.C. § 1117, Plaintiffs seek actual damages, Defendants' profits and such other damages as may be allowed by this or other law or statute.

127.    Injunctive Relief is available under the Lanham Act for false advertising. *Id.* Pursuant to 15 U.S.C. § 1116, Defendant seeks a permanent injunction barring publication of each of the false and misleading statements and an order requiring immediate deletion and take down of each of the false and misleading statements and requiring de-indexing of each of the web pages containing false and misleading statements.

128.    Global Six Sigma is entitled to costs and attorney's fees pursuant to 15 U.S.C. § 1117.  Defendants' false claims were fraudulent, deliberate and willful.

129.    Global Six Sigma is entitled to pre-judgment and post-judgment interest as allowed by law.

## IX.

### JURY DEMANDED

130.    Plaintiffs hereby demand a jury.

## X.

### PRAYER

WHEREFORE Plaintiffs, Peter Peterka and Global Six Sigma USA LP respectfully request a jury trial and demand judgment against each of the Defendants, Craig J. Setter, The Revocable Living Trust of Crag J. Setter, The Revocable Living Trust of Lauren M. Setter, Harmony Living LLC, Center for Corporate Advancement Group LLC, Carnegie Foundation LLC, and Aveta Limited in an amount in excess of $75,000, along with attorney's fees, costs and interests.

Respectfully submitted,

LILL FIRM, P.C.
4407 Bee Caves Road, Suite 111
Austin, TX 78746
Phone: (512) 330-0252
Fax:   (844) 402-9814
E-mail: david@lillfirm.com

*/s/ David S. Lill*

By:    David S. Lill
TX 12352500
ATTORNEY FOR PLAINTIFFS
Pro Hac Vice Application Pending

Robert L. Garber, Esquire

Co-Counsel for Plaintiff

PA I.D. 25458
355 Fifth Ave.
605 Park Bldg.
Pittsburgh, PA      15222-2407

Phone:  (412) 261-9933
Fax:      (412) 261-4507
E-Mail:  attorney.garber@gmail.com

DATED:  September 5, 2018

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PETER PETERKA, GLOBAL SIX SIGMA §
USA, L.P.                        §
       Plaintiffs              §
                             §
vs.                              §
                             §   CIVIL ACTION NO. _____
CRAIG J. SETTER, HARMONY LIVING  §
LLC, CENTER FOR CORPORATE        §
ADVANCEMENT GROUP LLC, AVETA     §
LIMITED.                         §
       Defendants              §

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the within Amended Complaint was filed via the Electronic Filing System. Parties may access this filing through the ECF filing system.

Respectfully submitted,

LILL FIRM, P.C.
4407 Bee Caves Road, Suite 111
Austin, TX 78746
Phone: (512) 330-0252
Fax:   (844) 402-9814
E-mail: david@lillfirm.com

*/s/ David S. Lill*

By:     David S. Lill
TX 12352500
ATTORNEY FOR PLAINTIFFS
Pro Hac Vice Application pending

Robert L. Garber, Esquire
Co-Counsel for Plaintiff

PA I.D. 25458
355 Fifth Ave.
605 Park Bldg.
Pittsburgh, PA     15222-2407

65

Phone:  (412) 261-9933
Fax:      (412) 261-4507
E-Mail:   attorney.garber@gmail.com

DATED: September 5, 2018